448 January 23, 2025 No. 42

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of B. D.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

S. E. D.,
*Appellant.*

Benton County Circuit Court
22JU01745; A184332

Locke A. Williams, Judge.

Argued and submitted November 21, 2024; on appellant's motion to amend designation of record filed November 20, 2024, and respondent's response filed November 26, 2024.

Kyle Sessions, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Emily N. Snook, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

Motion to amend designation of record denied as moot; reversed and remanded.

**SHORR, P. J.**

Mother appeals from a permanency judgment changing her child's permanency plan from reunification to guardianship.[1] Mother raises a number of challenges to the procedure employed and the substance of the judgment. Because we conclude that the juvenile court erred in failing to make sufficient findings as required by ORS 419B.476, we reverse and remand.[2]

We begin with the somewhat unusual procedural history of this dependency matter. The Department of Human Services (DHS) initially took mother's child, B, into protective custody and filed a dependency petition in April 2022. The court took jurisdiction over B with respect to mother in June 2022. In June 2023, the court held a permanency hearing and issued a judgment (the June judgment), in which the court concluded that DHS had made reasonable efforts to reunify the family and that mother had not made sufficient progress, such that B could not be safely returned to mother's care. The court checked several boxes on the form judgment indicating which efforts DHS had engaged in, and further adopted by reference the description of reasonable efforts included in "Exhibit 1," which was a DHS Family Report. With respect to the permanency plan moving forward, the judgment is contradictory: it indicates both that reunification was to be continued and that the plan was to be changed because reunification was not in the child's best interest. The judgment further ordered DHS to convene a permanency committee within 60 days.[3] Mother did not file an appeal of the June judgment.

On September 8, 2023, another hearing was held. On September 13, 2023, the juvenile court issued a second permanency judgment (the September judgment), in which

_____

[1] Father is not a party to this appeal.

[2] Based on our disposition, mother's motion to amend the designation of record on appeal is moot. We acknowledge that the transcript of the September 8, 2023, proceeding was included in the transcript provided on appeal, but it did not affect our analysis.

[3] A permanency committee is "a group of individuals who are responsible for making a recommendation regarding a permanency plan or a potential permanency resource when the child or young adult likely is not returning to his or her parent." OAR 413-070-0000(64).

the court indicated that the plan at the time of the hearing was reunification. The court found that DHS had made reasonable efforts to reunify the family, adopting by reference the "Reasonable or Active Efforts Regarding Planning section of the ODHS Family Report" as its findings and checking a number of boxes on the form judgment indicating the services provided by DHS. The court additionally found that mother had not made sufficient progress, and thus B could not be safely returned to her care. The September judgment did not establish an alternative permanency plan, but included the following:

> "The Court orders that the permanent plan of reunification should be changed to a different permanent plan because, despite the reasonable reunification efforts of ODHS, the child cannot be safely returned to Mother's or Father's care at the time of the hearing, and the evidence does not support a determination under ORS 419B.476(4)(c) and (5)(c) that further efforts will make it possible for the child to safely return home within a reasonable time. Therefore the permanent plan is changed from reunification of the family to a permanent plan to be determined following a contested hearing."

A further permanency hearing was scheduled for October 19, 2023. Mother did not file an appeal of the September judgment.

Following the September hearing, mother's counsel withdrew and replacement counsel was appointed. Shortly before the scheduled October hearing, replacement counsel filed a motion for a continuance to allow him adequate time to prepare for the hearing. The motion was granted and the hearing was continued to February 2024.

On February 21, 2024, the court convened a hearing, noting it was "a continuation of the Permanency Hearing of original order, starting in June of 2023." At multiple points during the hearing, the court made clear that the current hearing was only on the issue of what permanency plan should be implemented, given that the decision to change the plan away from reunification had been made in June 2023, eight months earlier. Counsel for DHS and B advocated for the plan to be changed to guardianship. The sole

witness at the hearing was the DHS caseworker assigned to the family, DeSerano, who primarily testified about why guardianship was the recommended permanency plan.[4] During cross-examination by mother's counsel, DeSerano testified about her interactions with mother and attempts to connect mother to an anger management class. Mother maintained that she remained a viable placement for B, and that B should return home to her. Mother declined to testify at the hearing, asserting that she was not prepared and that her attorney was not prepared to mount a response to both DeSerano's testimony and the letter that B read into the record.

At the conclusion of the hearing, the court made oral findings that adoption was not appropriate and that a plan of guardianship was better suited for B and the family, based on B's preference and for the purpose of maintaining familial attachments. In its oral findings, the court did not address either DHS's reasonable efforts or the sufficiency of mother's progress.

The court issued the permanency judgment the same day (the February judgment). It noted that the current permanency plan at the time of the hearing was reunification. The findings regarding reasonable efforts and mother's progress were identical to the September judgment, including the above-quoted language adopting by reference the "Reasonable or Active Efforts Regarding Planning section of the ODHS Family Report." With respect to the change in plan, the judgment stated:

"Following a permanency hearing held on June 16, 2023, and another held on September 8, 2023, the Court ordered that the permanent plan of reunification should be changed to a different permanent plan because, despite the reasonable reunification efforts of ODHS, the child cannot be safely returned to Mother's or Father's care at the time of the hearing, and the evidence does not support a determination under ORS 419B.476(4)(c) and (5)(c) that further efforts will make it possible for the child to safely return

_____

[4] B, who was nearly 16 years old at the time of the hearing, wrote a letter to the court expressing her preference for guardianship, and read the letter into the record at the hearing. She did not testify and was not questioned by any of the parties.

home within a reasonable time. Therefore, the Court orders that the current permanent plan is changed to the permanent plan specified in Section 9 below."

Section 9 ordered the plan changed to guardianship. Mother appeals from that judgment.

Mother raises five assignments of error: (1) the juvenile court abused its discretion in denying her motion to continue the February hearing, given her lack of access to exhibits and her counsel's lack of preparation; (2) the court failed to consider the statutory factors under ORS 419B.476(2)(a) relating to DHS's efforts and mother's progress through February 2024; (3) the court erred in not allowing mother to defend against the change in plan during the February hearing; (4) the court erred in changing the permanency plan solely based on what plan was in B's best interest; and (5) the court therefore erred in changing the permanency plan from reunification to guardianship. As explained below, we agree with mother that the court failed to comply with the requirements of ORS 419B.476(2)(a). As a result, we need not reach the remaining assignments.

ORS 419B.476 governs the conduct of permanency hearings and changes to permanency plans. It provides, in relevant part, that if the plan at the time of a permanency hearing is to reunify the family, the court "shall *** determine whether [DHS] has made reasonable efforts *** to make it possible for the ward to safely return home and whether the parent has made sufficient progress to make it possible for the ward to safely return home." ORS 419B.476(2)(a). Thus, the court reviews "both DHS's efforts to provide services to the parent and the parent's progress in ameliorating the conditions that led to the child becoming a ward of the court to determine whether the child's safe return home is possible at the time of the hearing." *Dept. of Human Services v. Y. B.*, 372 Or 133, 145, 546 P3d 255 (2024). The court is further required to enter an order "within 20 days after the permanency hearing" including, among other requirements, the court's determinations regarding DHS's efforts and the parent's progress, the determination of the permanency plan for the ward, and various other findings depending on what the plan is determined to be. ORS 419B.476(5).

Mother argues that the court erred by failing to make findings regarding DHS's efforts and mother's progress through February 2024, and instead erroneously relied on the determination of those factors that was made eight months earlier in the June judgment. DHS asserts that mother has failed to preserve that argument. Alternatively, DHS maintains that the February judgment contains all necessary findings required by ORS 419B.476.

We begin with DHS's preservation argument. DHS asserts that mother did not adequately preserve her argument that the juvenile court could not rely on the June or September determinations regarding DHS efforts and mother's progress because she did not object when the court made clear that the only issue before it at the February hearing was determining the appropriate new permanency plan. DHS further asserts that mother made no arguments at the February hearing regarding efforts or progress. Mother argues that the issue was preserved because she took the position that the plan should not change, impliedly holding DHS to its burden to prove that its efforts were reasonable and that her progress was insufficient, and the fact that the February hearing was a contested permanency hearing meant that the court was required to make the statutory findings. Mother alternatively argues that, to the extent that her assignment of error relates to the incomplete findings in the judgment, preservation was not required because she had no practical ability to challenge the insufficiency of the findings until the judgment issued.

We agree with mother that she adequately preserved her argument. Despite multiple statements from the court and the attorneys at the hearing that a decision had already been made to change the plan away from reunification, mother maintained throughout the hearing that B should be returned home to her. Mother's counsel and DHS's counsel both questioned DeSerano regarding her efforts to connect mother with services and mother's progress and actions throughout the life of the case. Those portions of the hearing indicate that mother resisted the limited scope of the hearing and considered DHS's efforts and her own progress to be issues that the court needed to resolve. Although

mother was aware that the February hearing was intended to focus only on the issue of whether the plan should change to adoption or guardianship, the plan remained reunification at the time of the hearing, and mother opposed any change in the plan. Under those circumstances, the court was required to make the statutorily required determinations regarding efforts and progress through the life of the case.

Turning to the merits, we agree with mother that the court erred in failing to make the required determinations under ORS 419B.476(2)(a). A determination regarding the reasonableness of DHS's efforts must be made based on a consideration of efforts "over the life of the case" with an emphasis "on a period before the hearing sufficient in length to afford a good opportunity to assess parental progress." *Dept. of Human Services v. S. S.*, 278 Or App 725, 735, 375 P3d 556 (2016) (internal quotation marks omitted). Both DHS's efforts and parental progress are assessed "to determine whether the child's safe return home is possible *at the time of the hearing*." *Y. B.*, 372 Or at 145 (emphasis added).

DHS maintains that the February judgment contains all of the required findings, and was based on the record that was before the court at the February hearing, not the findings from the 2023 hearings. We disagree, as that assertion is inconsistent with the judgment and the court's oral statements. Although the February judgment on its face states that DHS made reasonable efforts and mother had not made sufficient progress, it does not evaluate DHS's efforts or mother's progress through February 2024; rather, it repeats verbatim the findings that were included in the September judgment. Although the February judgment purports to adopt the "Reasonable or Active Efforts Regarding Planning section of the ODHS Family Report" as its written findings, the identical language appears in the September judgment. The February judgment does not specify which Family Report was being adopted by reference, and the record contains more than one Family Report. The court made no specific written findings regarding DHS's efforts or mother's progress for the period of time leading up to the February hearing, nor did it include any

finding that the previously identified efforts had continued following the September hearing or that mother's progress remained unchanged since September. Most importantly, and as noted above, the February judgment explicitly states that the determinations were made *following the June and September hearings* that DHS had made reasonable efforts and that mother had made insufficient progress to allow for B to be safely returned to her care.

The court's oral findings at the February hearing were consistent with the judgment's recitation that the reasonable efforts and insufficient progress determinations were based on an earlier record and not the record before the court at the time. The court made clear that it considered the question of *whether* to change the plan to be settled, and was only considering what the plan was to be changed to. At the start of the hearing the court stated: "So, we are now almost, what, eight months out from the change of plan from reunification to a plan to be determined. So it's time to determine what that plan is going to be." In addressing mother's concluding statements regarding lack of preparation the court stated:

> "[W]ith regard to preparation for the hearing, this was a hearing that—as [counsel for B] and others have pointed out, in June of 2023, from eight months ago, the Court made the determination that the plan that—that [B] would not be able to be returned home during a reasonable—within a reasonable period of time. And the plan was changed from reunification to another permanency plan."

The court effectively concluded in February that DHS's efforts had been reasonable and mother's progress was insufficient months earlier. DHS has identified no legal basis for the juvenile court to rely on five- or eight-month-old conclusions regarding efforts and progress when making the determination to change the permanency plan. Despite the assertions of the court and several attorneys at the February hearing that the plan had already been changed away from reunification, the plan in fact remained reunification as of the February hearing, per the February judgment. DHS was obligated to continue to provide the family with reasonable efforts throughout the life of the case, and the court was required to make findings about those

efforts and evaluate mother's progress as of the time of the change in the plan, and not simply conclude that the efforts had been reasonable and mother's progress was insufficient many months earlier. We appreciate that the permanency hearings were continued and took place over the course of eight months. That certainly made the juvenile court's work more difficult. But that did not relieve the court from its obligation under ORS 419B.476(2)(a) to determine over the life of the case whether DHS had made reasonable efforts to make it possible for the child to safely return home and whether the parent had made sufficient progress towards the same.

Because we reverse and remand, we do not reach the remainder of mother's assignments of error.

Motion to amend designation of record denied as moot; reversed and remanded.